IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 23, 2009

## STATE OF TENNESSEE v. WILLIE DOUGLAS JOHNSON

**Appeal from the Criminal Court for Knox County**
**No. 87077      Mary Beth Leibowitz, Judge**

_____

**No. E2008-02057-CCA-R3-CD - Filed July 27, 2009**

_____

A Knox County Criminal Court jury convicted the defendant, Willie Douglas Johnson, of attempted second degree murder, two counts of aggravated assault, and three counts of unlawful possession of a weapon. After merging the aggravated assault convictions into the conviction of attempted second degree murder and the weapon possession charges into a single conviction, the trial court imposed consecutive sentences of 25 years for attempted second degree murder and six years for unlawful possession of a weapon. In this appeal, the defendant asserts that the trial court erred by ruling that the State would be permitted to impeach his testimony through the use of prior felony convictions and that the trial court erred by enhancing his sentence on the basis that he showed no hesitation in committing the crimes when the risk to human life was high. Discerning no error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and NORMA MCGEE OGLE, J., joined.

Eric Lutton, Knoxville, Tennessee (on appeal), and Mary Ward, Knoxville, Tennessee (at trial), for the appellant, Willie Douglas Johnson.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Leslie Nassios, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The convictions in this case relate to the December 19, 2006 shooting of the victim, Kenneth L. King, in Knoxville. At approximately 10:15 p.m., the victim returned to his residence with his girlfriend, and as he exited his vehicle, the defendant approached him with a gun drawn. The victim elaborated, "By the time I got out of my car and turned around, [the defendant] was up on me with a pistol in my stomach, walked up on me and was like, 'Empty your pockets, mother

f*****.'" According to the victim, he dropped approximately $140 to the ground, and when the defendant bent over to retrieve the money, he pushed the defendant and ran away. At that point, the defendant fired four shots at the victim, and one shot struck the victim in the lower back. The victim stated that when he looked back, he saw the defendant drive away in a blue or black Buick LeSabre.

The victim testified that he had known the defendant since "growing up." He recalled that just before the shooting, he received a telephone call from Katoia Banks, whom he had dated for two to three months earlier in the year, but he did not answer the call. He stated that Ms. Banks had also briefly dated the defendant. Immediately after the shooting, the victim returned Ms. Banks's call and told her that the defendant had shot him. He recalled that his girlfriend took the telephone from him and began arguing with Ms. Banks.

The victim was transported to the hospital by ambulance and remained hospitalized for three days following the shooting. He testified that doctors elected to leave the bullet rather than remove it, and he stated that he continued to experience "problems" with his back.

Knoxville Police Department Detective A.J. Loefller interviewed the victim at the hospital. The victim identified the defendant as the perpetrator from a photographic lineup.

Ms. Banks testified that she had dated the defendant for nine or ten months, but the relationship ended before the shooting. She stated that the defendant blamed the victim for the breakup. She recalled that on the day of the shooting, the defendant telephoned her several times to "apologize about going off on [her] the day before." When Ms. Banks refused to meet with the defendant, he told her he was "going to get that n*****," meaning the victim. Ms. Banks testified that she "immediately hung up the phone and called [the victim] to let him know that he needed to be careful because . . . [the defendant] was about to do something to him." She was unable to reach the victim at that time, but he "called [her] about five or ten minutes after [she] called him and he said [her] name, and [she] couldn't really understand what he was saying and then his girlfriend got on the phone and said he'd been shot." When Ms. Banks spoke with the defendant later, he told her "it was [her] fault that he shot" the victim.

During cross-examination, Ms. Banks reiterated that although she was dating neither man at the time of the shooting, the defendant's unrequited love for her motivated him to shoot the victim. Ms. Banks denied that it was she who had been rebuffed in her attempts to rekindle a romantic relationship with the defendant. She admitted that the defendant never actually told her he shot the victim and conceded that she did not contact police with information regarding the shooting.

Knoxville Police Department Officer Ray Offenbacher, who responded to the shooting, testified that he observed a single gunshot wound to the victim's lower back. He recalled the victim's "screaming" in pain. He stated that the victim told him that "the subject approached him from the rear, made a statement to him, and then he took off running towards the house from the car,

and that's when he heard the shots." Officer Offenbacher testified that the victim never told him that he had thrown money onto the ground or that the defendant took any money from him.

Other evidence established that four Winchester .380 caliber shell casings were recovered from the area of the shooting. No weapon was ever recovered.

The State rested its case, and the defendant offered no proof. Based on the evidence presented, the jury convicted the defendant of attempted second degree murder and two counts of aggravated assault. Following a second, bifurcated proceeding, the jury also convicted the defendant of three counts of unlawful possession of a weapon.

## I. Use of Prior Convictions as Impeachment Evidence

The defendant asserts that the trial court erred by ruling that the State would be permitted to use his prior convictions of possession of cocaine and aggravated assault to impeach his testimony. He claims that the aggravated assault conviction was too stale and that the probative value of all three convictions was outweighed by the danger of unfair prejudice. The State asserts that the trial court did not abuse its discretion by ruling that the convictions could be used as impeachment evidence. In the alternative, the State contends that any error would be harmless in light of the overwhelming proof of the defendant's guilt.

Tennessee Rule of Evidence 609 provides in pertinent part:

(a) General Rule. For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime may be admitted if the following procedures and conditions are satisfied:

(1) The witness must be asked about the conviction on cross-examination. If the witness denies having been convicted, the conviction may be established by public record. If the witness denies being the person named in the public record, identity may be established by other evidence.

(2) The crime must be punishable by death or imprisonment in excess of one year under the law under which the witness was convicted or, if not so punishable, the crime must have involved dishonesty or false statement.

(3) If the witness to be impeached is the accused in a criminal prosecution, the State must give the accused reasonable written notice of the impeaching conviction before trial, and the court upon request must determine that the conviction's probative value on credibility

-3-

outweighs its unfair prejudicial effect on the substantive issues. The court may rule on the admissibility of such proof prior to the trial but in any event shall rule prior to the testimony of the accused. If the court makes a final determination that such proof is admissible for impeachment purposes, the accused need not actually testify at the trial to later challenge the propriety of the determination.

(b) Time Limit. Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed between the date of release from confinement and commencement of the action or prosecution; if the witness was not confined, the ten-year period is measured from the date of conviction rather than release. Evidence of a conviction not qualifying under the preceding sentence is admissible if the proponent gives to the adverse party sufficient advance notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence and the court determines in the interests of justice that the probative value of the conviction, supported by specific facts and circumstances, substantially outweighs its prejudicial effect.

Tenn. R. Evid. 609. We review the trial court's determination of this issue via an abuse of discretion standard. *State v. Thompson*, 36 S.W.3d 102, 110 (Tenn. Crim. App. 2000).

Here, the State filed pretrial notice that it would seek to impeach the defendant's testimony, should he choose to testify, with his prior convictions of two counts of aggravated robbery, aggravated assault, Class D felony theft, and two counts of cocaine possession. The defendant filed a motion asking the trial court for a pretrial ruling on the admissibility of the convictions for impeachment. The trial court ruled that the State would be permitted to utilize the convictions of aggravated assault, felony theft, and cocaine possession but determined that the convictions of aggravated robbery were too similar to the current charges to allow their use. Based upon this ruling, the defendant chose not to testify.

The defendant first contends that his aggravated assault conviction was too stale to be used as impeachment evidence. The defendant asks this court to "assume, based upon the [defendant's] parole date, that [the defendant] had served a substantial amount of time in custody awaiting a disposition" of the aggravated assault charge, which disposition came on May 7, 1993. Thus, he argues, "his aggravated assault conviction should have been completed on May 7, 1997 - well before the parole revocation" that came in September 1998.[1]

_____

[1]Inexplicably, the defendant states in another portion of his brief that his two-year sentence for felony theft, imposed on the same day as the four-year sentence for aggravated assault and ordered to be served concurrently with that sentence, did not expire until March 11, 2000.

-4-

The record is silent, however, on the length of any pretrial incarceration on the aggravated assault charge, the date upon which the parole violation warrant was issued, or the amount of time, if any, that was credited to the petitioner's sentence during his parole, *see* T.C.A. § 40-28-122(a) ("Upon revocation of parole, the time an inmate spent on parole shall not be considered as service of the sentence unless the board determines to grant all or part of the time to the inmate."). Without knowing the precise amount of time the defendant served prior to entering the Department of Correction on the aggravated assault conviction, the amount of time the parole violation was pending before September 1998, or whether the parole board chose to credit the petitioner's sentence with the time he spent on parole, we cannot say with any certainty that the defendant's four-year sentence for the aggravated assault conviction terminated on or before May 7, 1997, as the defendant claims.

The defendant also claims, for the first time on appeal, that the probative value of the aggravated assault conviction as impeachment evidence was outweighed by its unfair prejudicial effect. Because the defendant first makes this challenge on appeal, it is waived. *State v. Adkisson*, 899 S.W.2d 626, 635 (Tenn. Crim. App. 1994) (holding that a "party cannot assert a new or different theory to support the objection in the motion for a new trial or in the appellate court"); *State v. Aucoin*, 756 S.W.2d 705, 715 (Tenn. Crim. App. 1988) (holding that a party cannot object on one ground at trial and assert new basis on appeal); *State v. Jenkins*, 733 S.W.2d 528, 532 (Tenn. Crim. App. 1987); *State v. Rhoden*, 739 S.W.2d 6, 11-12 (Tenn. Crim. App. 1987).

Finally, the defendant asserts that the probative value of his 2004 and 2006 convictions of possession of cocaine was outweighed by the unfair prejudicial effect of the convictions. He argues that the probative value of these convictions, which were not crimes of dishonesty, was low while the prejudicial nature of the convictions was "quite high." The State concedes that the drug convictions were only slightly probative of the defendant's credibility but nevertheless asserts that "because the defendant's prior crimes could be found to be probative for credibility, the trial court did not abuse its discretion." In the alternative, the State contends that any error in the trial court's ruling was harmless. In this second assertion, we agree with the State.

In *State v. Waller*, 118 S.W.3d 368 (Tenn. 2003), our supreme court concluded that convictions for the possession, sale, manufacture, or delivery of illegal drugs do not involve dishonesty, *see id.* at 372, and, as such, are "only slightly probative" on the issue of credibility, *id.* at 373. The supreme court also concluded that before such convictions are used as impeachment evidence, the trial court must "carefully balance the impeaching conviction's relevance with regard to credibility against its unfair prejudicial effect on substantive issues." *Id.* at 373. Here, the trial court did not engage in such an analysis. Instead, the court ruled simply that "if [the defendant] does testify [the State] may use those" convictions. Despite the trial court's failure to engage in the appropriate analysis, any error in the court's ruling was harmless.

Although the defendant correctly asserts that case law does not require the defendant to make an offer of proof to preserve the issue of the erroneous admission of previous convictions for impeachment, our courts have consistently held that "an offer of proof may be the only way to

demonstrate prejudice." *State v. Galmore*, 994 S.W.2d 120, 125 (Tenn. 1999). Here, as in both *Galmore* and *Waller*, the defendant did not testify at trial, did not make an offer of proof, and offers no summation of his intended testimony on appeal. Moreover, because the defendant presented no proof at trial, it is difficult to ascertain any specific theory of defense against which we could gauge the strength of the prosecution's case. *See id.* at 124-25. The evidence adduced at trial established that the defendant told Ms. Banks he was "going to get" the victim shortly before he arrived at the victim's residence and shot him in the back. The victim positively identified the defendant as the shooter. Without any idea as to how the defendant intended to refute this evidence, we hold that the error was harmless. *See Waller*, 118 S.W.3d at 374 (holding erroneous ruling harmless where defendant failed to make an offer of proof and "presented no argument on appeal concerning the substance of his contemplated testimony"); *see also Galmore*, 994 S.W.2d at 125.

## II. Sentencing

In his final issue, the defendant claims that the trial court erred by enhancing his sentences based upon its finding that the defendant had no hesitation about committing a crime when the risk to human life was high. The State asserts that "the trial court did not err in applying the factor and even assuming otherwise, the other five factors found justified the mid-range sentence." We agree with the State.

When there is a challenge to the length of a sentence, it is the duty of this court to conduct a de novo review of the record with a presumption that the determinations made by the trial court are correct. T.C.A. § 40-35-401(d) (2006). This presumption is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The burden of showing that the sentence is improper is upon the appellant. *Id.* In the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely de novo. *Id.* If appellate review, however, reflects that the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this court must affirm the sentence, "even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

The mechanics of arriving at an appropriate sentence are spelled out in the Criminal Sentencing Reform Act of 1989. At the conclusion of the sentencing hearing, the trial court determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the trial and the sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) evidence and information offered by the parties on the enhancement and mitigating factors, (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee, (7) any statement the defendant wishes to make in the defendant's behalf about sentencing, and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-210(a), (b); -103(5); *State v. Holland*, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993).

After finding that the defendant was a Range III, persistent offender, *see* T.C.A. § 40-35-107, for his conviction of attempted second degree murder, and a career offender, *see id.* § 40-35-108, for his conviction of unlawful possession of a weapon, the trial court considered as enhancement factors the defendant's "considerable criminal history," that the injuries to the victim were particularly great, that the defendant committed the crimes while out on bond, that the defendant possessed a firearm during the commission of the attempted second degree murder, that the defendant had no hesitation about committing a crime where the risk to human life was high, and the defendant's previous failures at complying with sentences involving release into the community. *See* T.C.A. § 40-35-114(1), (6), (8), (9), (10), (13) (2006). The defendant contests only the application of the enhancement factor for unhesitatingly causing a high risk to human life, complaining that this factor should not have been applied because it is inherent in the offense of attempted second degree murder.

Code section 40-35-114 provides that "[i]f appropriate for the offense and if not already an essential element of the offense, the court shall consider, but is not bound by," a list of statutory enhancement factors. T.C.A. § 40-35-114. "In the case of attempted second degree murder, a high risk to human life will obviously exist," generally making factor 10 inapplicable to a conviction for attempted second degree murder. *See State v. Jerry B. Crow*, No. 01C01-9310-CR-00348, slip op. at 8 (Tenn. Crim. App., Nashville, May 11, 1995). This court has held, however, that "enhancement factor (10) may be applied where the defendant creates a high risk to the life of a person other than the victim." *State v. Bingham*, 910 S.W.2d 448, 452 (Tenn. Crim. App. 1995), *overruled in part on other grounds by State v. Hooper*, 29 S.W.3d 1, 9-10 (Tenn. 2000). Here, the proof established that as the defendant fired his gun at the victim, the victim's girlfriend sat in the car nearby. From this, the trial court concluded that the defendant endangered the life of a person other than the victim. We will not disturb the sentencing decision of the trial court.

*Conclusion*

Based on the foregoing analysis, the judgments of the trial court are affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE